**GREENBERG TRAURIG, LLP**
Alan J. Brody, Esq.
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
(973) 443-3543 (Telephone)
(973) 295-1333(Facsimile)

*-and-*

**GREENBERG TRAURIG, LLP**
Tracy L. Gerber, Esq. (admitted pro hac vice)
Elizbeth E. Moum, Esq. (admitted pro hac vice)
777 S. Flagler Drive, Suite 300 East
West Palm Beach, Florida 33401
(561) 650-7900 (Telephone)
(516) 655-6222 (Facsimile)

*Counsel to Jefferies LLC and Jefferies Group LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> RICK ALAN DAVIDSON, <br><br>       Debtor. | Chapter 11 <br><br> Case No. 19–11486 (SMB) |
| JEFFERIES, LLC and <br> JEFFERIES GROUP, LLC, <br>       Plaintiffs, <br> v. <br><br> RICK ALAN DAVIDSON, <br><br>       Defendant. | Adversary Proceeding No. 19-1395 (SMB) |

**DECLARATION OF LAURI SCORAN IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]**

Lauri Scoran declares under penalty of perjury, pursuant to 28 U.S.C. § 1746:

---

[1] All capitalized terms not defined herein shall have the meaning set forth in Jefferies' Statement of Material Facts filed contemporaneously herewith.

1. My name is Lauri Scoran, and I am over 18 years of age. I submit this declaration in support of Jefferies LLC's and Jefferies Group LLC's (collectively, "Jefferies") opposition to the motion for summary judgment filed by Rick Alan Davidson, the above-captioned debtor and defendant.

2. I am the Chief Compliance Officer of Jefferies and have served in this role since March 2012. In my role, I am responsible, in part, for overseeing compliance and registration-related issues related to prospective candidates.

3. I have personal knowledge of the facts stated in this Declaration, or I have reviewed pertinent business records created, received, or maintained by Jefferies in the normal course of its business operations. I have also reviewed and am familiar with documents produced by non-party Morgan Stanley Smith Barney ("LLC") to Jefferies on or about October 16, 2018 and October 26, 2018, in response to an Order for Production issued by the Chairperson of an arbitration panel in Arbitration No. 17-02868 before the dispute resolution forum of the Financial Industry Regulatory Authority ("FINRA"). The documents produced by Morgan Stanley were not among the books and records of Jefferies before their production by Morgan Stanley in October 2018.

4. In early 2016, Jefferies began discussing potential employment with a prospective recruit named Rick Alan Davidson ("Mr. Davidson"), who was then employed as a financial advisor at Morgan Stanley. Jefferies was considering Mr. Davidson for employment in Jefferies' Wealth Management Division.

5. Generally speaking, given the highly regulated nature of the securities industry and the risks of employing a financial advisor with a history of customer complaints, disciplinary actions, regulatory scrutiny and other compliance-related issues, FINRA requires member firms

to investigate the good character, business reputation, qualifications and experience of an applicant before the member applies to register the applicant with FINRA. See FINRA Rule 3110 (e). In compliance with this Rule, Jefferies investigates each financial advisor's compliance history prior to his or her hiring.

6. During his pre-hire discussions with Jefferies, Mr. Davidson met and/or spoke with members of Jefferies' business management and Compliance departments.

7. During his recruitment and prior to his employment start date, Mr. Davidson was asked about compliance-related issues he might have faced at his current and prior employers, including customer complaints, regulatory investigations, and internal investigations.

8. Mr. Davidson disclosed three customer complaints (which had been made by clients Emily Sonnenblick, Edwin Hunter, and Stephen Levy) and advised that he was placed on a non-disciplinary, 30-day suspension while Morgan Stanley reviewed the complaint made by Emily Sonnenblick.

9. Prior to his commencement of employment with Jefferies, Mr. Davidson did not disclose to Jefferies any further compliance-related issues that he experienced at his prior employers. He also informed Jefferies that he would be leaving Morgan Stanley voluntarily. He did not disclose that he (1) had received two (2) Letters of Reprimand for unauthorized trading, (2) was suspended for unauthorized trading and violation of Morgan Stanley's drug usage policy, (3) received a Cautionary Action Letter from FINRA for exercising unauthorized discretion in four client accounts, (4) was placed on heightened supervision at Morgan Stanley for trading violations, (5) violated FINRA rules by disrupting a FINRA testing center during exams in and (6) was subject to a Last Chance Agreement due to violations of Morgan Stanley's trading and drug usage policies.

10. Mr. Davidson commenced employment with Jefferies on May 17, 2016. On May 17, 2017, Jefferies notified Mr. Davidson that it would be terminating his employment.

11. Following the conclusion of Mr. Davidson's employment with Jefferies, Jefferies commenced Arbitration No. 17-02868 against Mr. Davidson in FINRA Dispute Resolution, to collect on an outstanding debt which Mr. Davidson owed Jefferies pursuant to a promissory note Jefferies extended to Mr. Davidson as an incentive to his hiring (the "Loan"). As of May 7, 2019 – when Davidson filed for bankruptcy – there was an outstanding principal balance of approximately $5,142,500.00, plus accrued interest of $857,900.54, attorneys' fees and costs of $626,083.30, and estimated arbitration forum fees of $20,587.50, for a total of $6,647,071.34 due from Defendant to Jefferies under the Note (the "Indebtedness"). Jefferies' Proof of Claim [Bankruptcy Case, Doc. No. 5].

12. In the course of that litigation, Jefferies subpoenaed Mr. Davidson's prior employer, Morgan Stanley, through an Order of Production issued by the Chairperson of the arbitration panel in the FINRA arbitration.

13. In response to the Order of Production, Morgan Stanley produced evidence of the following compliance-related issues involving Mr. Davidson:

   a. In June 2011, Morgan Stanley issued a disciplinary Letter of Reprimand to Mr. Davidson for exercising discretion in client accounts and unauthorized trading. *See* Exhibit 6 to the Declaration of Alan J. Brody ("Brody Dec.") (June 2011 Letter of Reprimand). Mr. Davidson was aware of the Letter of Reprimand, which he signed on August 31, 2011. *Id.*

   b. In 2012, Morgan Stanley investigated Mr. Davidson for unauthorized trading again, and in February 2012, Defendant received another Letter of Reprimand

from Morgan Stanley for this conduct. Ex 8 to the Brody Dec. (February 2012 Letter of Reprimand). Mr. Davidson was fully aware of the Letter of Reprimand, which he signed on February 7, 2012. *Id.*

c. Following Morgan Stanley's 2012 internal investigation, Morgan Stanley also required Defendant to sign a document titled "Last Chance Agreement" (the "Last Chance Agreement"), stating the Firm had determined that Mr. Davidson had exercised unauthorized discretion in several client accounts and tested positive for cocaine use, in violation of the Firm's policies on the exercise of discretion in client accounts and drug usage. Ex. 4 to the Brody Dec. (Last Chance Agreement). For these violations, Mr. Davidson was suspended, without pay, for thirty (30) days and was forbidden from contacting clients. *Id.* Contrary to what Mr. Davidson told Jefferies during pre-hire discussions, this suspension was disciplinary in nature. Ex. 9 to the Brody Dec. (March 5, 2012 Email from Kat Koutsantonis to Ben Firestein). The Last Chance Agreement gave Mr. Davidson a "last chance" at Morgan Stanley and stated Morgan Stanley immediately would terminate Mr. Davidson's employment for Cause for any additional violations of the Firm's policies. Ex. 4 to the Brody Dec. (Last Chance Agreement). Mr. Davidson was fully aware of the Last Chance Agreement, the seriousness of his policy violations and the severe consequences of future violations as evidenced by his execution of the Last Chance Agreement on February 7, 2012. *Id.*

d. Due to several reports about Mr. Davidson's suspected drug use, negative changes in behavior and Mr. Davidson's positive test for cocaine, Morgan Stanley also

5

required Mr. Davidson to complete a drug rehabilitation program and submit to ongoing drug testing as a condition of his continued employment. *Id.*

e. On March 8, 2012, FINRA issued a letter finding Mr. Davidson had violated FINRA rules by causing disturbances at a FINRA testing center while taking a FINRA licensing exam. Ex 10 to the Brody Dec. (March 8, 2012 FINRA Letter). FINRA requested Morgan Stanley to outline the steps it has taken to ensure Mr. Davidson abides by FINRA rules of conduct in the future. *Id.*

f. On March 13, 2012, Morgan Stanley's Heightened Supervision Committee determined that Mr. Davidson should be placed on heightened supervision for at least six months, requiring, *inter alia*, Morgan Stanley's Branch Manager to contact Mr. Davidson's clients to confirm that trades in non-discretionary accounts were authorized by the clients prior to Mr. Davidson entering such trades, and to review ten percent (10%) of Mr. Davidson's emails (the "March 2012 Memorandum"). Ex. 11 to the Brody Dec. (March 2012 Memorandum). Mr. Davidson signed the March 12, 2012 Memorandum demonstrating unequivocally that he was fully aware that Morgan Stanley placed him on Heightened Supervision. *Id.* Being placed on heightened supervision is a serious matter in the securities industry.

g. On May 9, 2012, Morgan Stanley extended the duration of Mr. Davidson's heightened supervision until December 31, 2012, subject to further extensions. Ex 12 to the Brody Dec. (May 2012 Memorandum). Mr. Davidson signed a new Heightened Supervision Memorandum on May 22, 2012. *Id.*

h. On May 16, 2013, following an investigation by FINRA into Mr. Davidson's conduct, FINRA issued a Cautionary Action Letter (a form of non-reportable written discipline) to Mr. Davidson for exercising discretion without written authorization in four (4) customer accounts. Ex 13 to the Brody Dec. (May 16, 2013 FINRA Cautionary Action Letter).

i. In addition to the three customer complaints Mr. Davidson disclosed to Jefferies before his hiring, Mr. Davidson had an additional complaint against him by Susi Kesterman for engaging in unauthorized trading with respect to corporate bond investments beginning in January 2015 while at Morgan Stanley. Ex. 33 to the Brody Dec. (May 22, 2017 Email from Ayanna Bonalde to Barbara Flessas enclosing Amended Form U-5).

j. Mr. Davidson was the subject of another internal investigation by Morgan Stanley's Special Investigations Unit ("SIU") in 2016. The documents produced by Morgan Stanley evidence that Mr. Davidson was aware of Morgan Stanley's 2016 internal investigation, during which he was asked in writing on March 15, 2016 by a Senior Complex Risk Officer, "Pursuant to SIU's ongoing investigation, please provide your personal cell phone records from January 1, 2015 to March 15, 2016. Please provide these records no later than Tuesday, March 22, 2016." Ex. 2 to the Brody Dec. (March 15, 2016 Email from Darrin Wirhouski to Rick Davidson).

k. At the time of his resignation, Morgan Stanley's Complex, Regional, Division and National Risk and Compliance divisions "were in agreement that his imminent

termination was the next step." Ex. 3 to the Brody Dec. (May 17, 2016 Email from Marie Matthews).

14. Prior to Mr. Davidson's employment start date, he never apprised Jefferies of the compliance-related issues or his history of drug abuse, identified in the Paragraph immediately above.

15. These are serious events and issues and viewed in their totality, would have caused Jefferies great concern if it had knowledge of all of these facts when considering whether to hire Mr. Davidson. They evidence that employing Mr. Davidson could present risk of future compliance violations, customer complaints, litigations, financial penalties, reputational harm and regulatory scrutiny.

16. In addition, under applicable rules, regulations and written guidance issued by securities industry regulators, including FINRA and the Securities and Exchange Commission ("SEC"), Jefferies would have had to carefully consider whether and how it could appropriately supervise Mr. Davidson given his compliance history.

17. For these reasons, Jefferies' Compliance Department, which I oversee, would not have approved Mr. Davidson's hire, if it had known of Mr. Davidson's extensive history of compliance-related issues prior to his hire date.

18. Without approval from the Compliance Department, Jefferies would not have moved forward with the hiring of Mr. Davidson.

19. If Mr. Davidson had not been hired, Jefferies would not have extended the Loan to him.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, NY
       May 15, 2024

*/s/ Lauri Scoran*
Lauri Scoran

ACTIVE 697784789v2

9